IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| STEVEN C. SMITH, | : | CASE NO.  10-89420-PWB |
| | : | |
| Debtor. | : | |
| − − − − − − − − − − − − − − − − − | : − − − − − − − − − − − − − − − − − − | |
| | : | |
| CATHY L. SCARVER, as Trustee-in- | : | |
| Bankruptcy for the Bankruptcy Estate of | : | |
| Steven C. Smith, | : | |
| | : | |
| Movant, | : | CONTESTED MATTER |
| | : | |
| v. | : | |
| | : | |
| STEVEN C. SMITH, | : | |
| GEORGIA DEPARTMENT OF REVENUE, | : | |
| GOOD GATEWAY, LLC, | : | |
| | : | |
| Respondents. | : | |

**TRUSTEE'S MOTION TO SELL MEMBERSHIP INTEREST
IN ORLANDO GATEWAY, LLC FREE AND CLEAR
AND FOR (A) AN ORDER AND NOTICE
(i) DIRECTING BIDDING PROCEDURES SUBJECT TO OBJECTION, (ii) SETTING
PRELIMINARY HEARING IN EVENT OF OBJECTION TO BIDDING PROCEDURES,
AND (iii) SETTING FINAL SALE HEARING,
(B)  AN ORDER AT FINAL SALE HEARING APPROVING SALE FREE AND CLEAR**

COMES NOW Cathy L. Scarver, as Chapter 7 trustee (the "Trustee") for the estate of

Steven C. Smith, the above-stated debtor (the "Debtor"), and submits Trustee's Motion to Sell

Estate's Interest in the Debtor's Membership Interest in Orlando Gateway LLC Free and Clear

and for (A) an Order and Notice (i) Directing Bidding Procedures Subject to Objection,

(ii) Setting Preliminary Hearing in Event of Objection to Bidding Peocedures, and

(iii) Setting Final Sale Hearing, and (B) an Order at Final Sale Hearing Approving Sale

Free and Clear (the "Motion").  In support of the Motion, Trustee shows the Bankruptcy

Court as follows:

## I.  JURISDICTION AND VENUE

1.      The Bankruptcy Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§

157 and 1334, and this matter is a core proceeding under 28 U.S. C. § 157 (b) (2).  Venue is

proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought

herein are Sections 105(a), and 363(b), (f) and (m) of the Bankruptcy Code.

## II.  BACKGROUND

### Bankruptcy Case and Trustee

2.      On October 2, 2010 (the "Petition Date"), Steven C. Smith, an individual, filed

his voluntary case under Chapter 7 of Title 11 of the United States Code, U.S.C. §§ 101 et.seq.,

as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern

District of Georgia, Atlanta, Division (the "Bankruptcy Court"), styled In re Steven C. Smith,

10-89420-PWB (the "Bankruptcy Case").  Cathy L. Scarver was appointed Chapter 7 trustee.

3.      Also on the Petition Date, the Debtor filed his schedules (the "Schedules") and

statement of financial affairs (the "SOFA") under penalty of perjury.  The Schedules were

amended on November 22, 2010. (Doc. No. 28)

4.      On January 31, 2011 the Debtor received a discharge in the Bankruptcy Case.

5.      On March 8, 2013, an order was entered Approving Account, Discharging

Trustee and Closing Estate, and thereafter the Bankruptcy Case was closed.

6.      On November 10, 2015, an order was entered reopening the Bankruptcy Case,

and on November 13, 2015, Cathy L. Scarver was reappointed Chapter 7 Trustee (the "Trustee")

and continues as such.

**Unscheduled Membership Interest**

7.     Upon the commencement of the Bankruptcy Case, a bankruptcy estate is created and all legal and equitable interests of the Debtor become property of the bankruptcy estate (the "Bankruptcy Estate") 11 U.S.C. § 541(a).  The Chapter 7 Trustee is the sole representative of the Bankruptcy Estate, pursuant to 11 U.S.C. § 323(a).

8.      Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy Code.

9.     At the close of the bankruptcy case, property of the estate that is not abandoned under § 554 and that is not administered in the bankruptcy proceeding remains the property of the estate.  Failure to list an interest on a bankruptcy schedule leaves that interest in the bankruptcy estate. Parker v. Wendy's International, Inc., 365 F.3d at 1272.  In re Lansberry, 177 B.R. 49, 55-56 (Bankr. W.D. Pa. 1995), cited with approval in Owensby & Associates, Inc., 631 S.E.2d at 480 n.

10.     At the time the Bankruptcy Case was commenced, Steven C. Smith owned 100% of the membership interests (the "Membership Interest") in Orlando Gateway, LLC (the "OG").

11.     The Debtor's membership interest in OG was not listed on the Debtor's Schedule B as property that he owned.

12.     At the commencement of the Bankruptcy Case, the OG Membership Interest and any and all rights of the Debtor therein became Property of the Bankruptcy Estate, and the Trustee became the sole representative of the OG Membership Interest.

13.     The OG Membership Interest was never abandoned by the Trustee pursuant to 11 U.S.C.  §554.  After the Bankruptcy Case was closed, the OG Membership Interest remained

property of the Bankruptcy Estate.

### Sale of OG Membership Interest

14.     The Trustee desires to sell the Bankruptcy Estate's interest in the OG

Membership Interest for the benefit of the Bankruptcy Estate.

15.     The Trustee has received an offer to purchase any and all interest of the

Bankruptcy Estate in the Debtor's interest in the OG Membership Interest.

### III.  SALE

### The Property being Sold

16.     The property being sold is all right, title, and interest of the Bankruptcy Estate in,

to, and under the OG Membership Interest, including all managerial and ownership rights in OG

(the "Property").

### Selling Process and Sale Submitted for Approval

17.     Trustee has been in discussions and negotiations with interested parties in

anticipation of obtaining the Property.

18.     Trustee received an offer to purchase the Property by BKGD, LLC of 5100

Peachtree Industrial Blvd., Peachtree Corners, Georgia 30071 ("Purchaser" or the "Initial

Bidder" as defined below).  After engaging in negotiations, Trustee entered into an agreement

with Purchaser dated February 27, 2016 (the "Agreement").

19.     **Upon information and belief, BKGD, LLC is owned by Niloy Thakker and**

**Rohan Thakker and managed by Niloy Thakkar ("The Thakkers").  The Thakkers were**

**members of Niloy and Rohan, LLC, which was a member of Orlando Gateway Partners,**

**LLC.  Upon information and belief, SEG Gateway, LLC ("SEG") held or holds the**

**remaining membership interest in Orlando Gateway Partners, LLC, and OG held or holds**

4

an 87% membership interest in SEG.  Upon information and belief, Good Gateway, LLC

("Good") is the owner of a 13% membership interest in SEG, and may be asserting an

interest in the OG's interest in SEG in the state and federal courts in in Florida.   Upon

information and belief, affiliates of BKGD, LLC are or have been engaged in litigation with

Good in state and federal courts in Florida.   Upon information and belief, Good has filed

proofs of claim in the Chapter 11 cases pending in the Bankruptcy Court for the Northern

District of Georgia and being jointly administered under Bay Circle Properties, LLC, Case

No. 15-58440-WLH, to which the debtors in these cases have objected.  Collectively, the

litigation in Florida and the bankruptcy court in Georgia may be referred to hereinafter as

the "Related Litigation."

20.    A copy of the Agreement is attached to this Motion as **Attachment I**, and is

incorporated herein by reference.

21.    Certain material terms of the Agreement are summarized as follows:

Purchase Price:              $100,000.00

Earnest Money Deposit:    $  10,000.00

22.    To understand all of the terms of the Agreement, the Agreement must be read in

its entirety.

23.    In Trustee's business judgment, the Agreement is reasonable and adequate, and is

the highest and best offer, and Trustee's sale of the Property is in the best interest of the

Bankruptcy Estate and Creditors.

## IV.  AUTHORITY

### Sale Generally

24.    Section 363(b)(1) of the Bankruptcy Code provides that a trustee, "after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."

25.       This is not a sale of substantially all of the assets of this Bankruptcy Estate.

26.       In this Chapter 7 case, a sale pursuant to Section 363 of the Bankruptcy Code may be approved if (a) the property has been adequately exposed to the market and fair and adequate notice of a proposed sale has been given, (b) the sale is being proposed in good faith and the purchaser will be a good faith purchaser, (c) the purchase price is adequate, and (d) it is in the best interest of the estate and the creditors.  Each of these requirements has been met.

### Exposure to Market and Notice

27.       The Property has been exposed to the market by Trustee's negotiations and will continue to be adequately exposed to the market pursuant to the Bidding Procedures set forth below.

28.       On information and belief, a judgment was entered against OG in the Florida litigation in excess of $7,686,000, and OG has little or no going concern value, and may only have value to the participates in the Related Litigation.

### Good Faith

29.       The sale is being proposed in good faith and the purchaser will be a good faith purchaser.  Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). While the Bankruptcy Code does not define "good faith", the Third Circuit

in In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986), has held that:

> [t1he requirement that a purchaser act in good faith . . . speaks to
> the integrity of his conduct in the course of the sale proceedings.
> Typically, the misconduct that would destroy a purchaser's good
> faith status at a judicial sale involves fraud, collusion between the
> purchaser and other bidders or the trustee, or an attempt to take
> grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted).

30.     The Agreement was negotiated at arm's-length, and the Initial Bidder has at all

times acted in good faith under the Section 363(m) standard. Similarly, any auction of the

Property will produce a good faith purchaser. Trustee thus requests that the Bankruptcy Court

make a finding that the Initial Bidder or other successful bidder at an auction has purchased the

Property in good faith within the meaning of Section 363(m) of the Bankruptcy Code.

### Adequate Price and Best Interest

31.     Trustee submits that the Agreement provides an adequate price, and that the

bidding procedures assure that the sale will be at the highest and best price and to a good faith

purchaser.

32.     According to Trustee's investigations, the Purchase Price is adequate in light of

the little or no going concern value and the judgment against OG.

33.     Based on the above analysis and considerations, in Trustee's business judgment,

the Agreement is the highest and best offer, and is in the best interest of the Bankruptcy Estate

and creditors.

**Free and Clear**

34.    The sale will be free and clear of all liens, claims, interests, and encumbrances.

Section 363(f) of the Bankruptcy Code sets forth the conditions under which a sale of estate

property outside the ordinary course of business can be free and clear of all liens, claims,

interests, and encumbrances.  Estate property may be sold free and clear under Section 363(f)(1)

if applicable non-bankruptcy law permits it, under Section 363(f)(2) if such lien holder consents,

under Section 363(f)(3) where the price at which the property is to be sold is greater than the

aggregate value of all liens on the property, under Section 363(f)(4) if such interest is in bona

fide dispute, or under Section 363(f)(5), if a lien holder could be compelled to accept a money

satisfaction in a legal or equitable proceeding.

**Taxes, Liens and Encumbrances**

35.    According to a search of the public lien records, the following liens are recorded

with the Clerk of the Superior Court Fulton County Georgia in the same name of the Debtor:

a)  State Tax Execution was filed by Georgia Department of Revenue dated April

14, 2008, Lien Book 887, Page 535 in the amount of $11,497.86 (the "GADOR Debt").  If it is

determined that the GADOR Debt is a valid debt of the Debtor's Bankruptcy Estate, the

Purchase Price is sufficient to pay the GADOR Debt in full.

b)  An Alias Writ of Fieri Facias by HSBC Bank Nevada, NA as successor in

interest to Direct Merchants Credit Card Bank, NA dated October 12, 2010, Lien Book 1750,

Page 623 in the amount of $9,484.98 is filed against a party with the same name as the Debtor

(the "HSBC Debt").  If it is determined that the HSBC Debt is a valid debt of the Debtor's

Bankruptcy Estate, the Purchase Price is sufficient to pay the HSBC Debt in full.

c)  A Writ of Fieri Facias by Portfolio Recovery Associates, LLC dated January

29, 2010, Lien Book 1414, Page 238 in the amount of $1,655.65 (the "Portfolio Debt) is filed against a party with the same name as the Debtor.  If it is determined that this is a valid debt of the Debtor's Bankruptcy Estate, the Purchase Price is sufficient to pay the Portfolio Debt in full.

　　　　d)  A Writ of Fieri Facias by Francisco Gomez dated April 28, 2004, Lien Book 72, Page 669 in the amount of $12,226.26 (the "Gomez Debt") is filed against a party with the same name as the Debtor.  If it is determined that this is a valid debt of the Debtor's Bankruptcy Estate, the Purchase Price is sufficient to pay the Gomez Debt in full.

　　　　e)  Upon information and belief, OG's membership interest in SEG may be all or substantially all of the assets of OG, and Good may be asserting an ownership interest in OG's 87% membership interest in SEG in the Related Litigation.  To the extent that Good is asserting an interest in OG, such assertion is disputed by the Trustee.

36.　　Section 363(f) is satisfied, because the Purchase Price is greater than the aggregate value of all valid and invalid liens of record against the property, or are in dispute. Additionally, those valid lienholders will be adequately protected, since all valid liens will attach to the net proceeds of the sale, and be reserved for by Trustee, subject to any claims and defenses that Trustee may possess with respect to such liens.    Accordingly, the sale should be approved.

## V.  BIDDING PROCEDURES

37.　　The proposed sale under the Agreement is subject to Bankruptcy Court approval.

38.　　In accordance with bankruptcy procedure, during the approval process, another bidder may seek to present the Bankruptcy Court with an offer on the Property.  This bankruptcy procedure is to allow for a higher or better price if it will close, and to assure the integrity of the process.

39.　　In furtherance of these bankruptcy purposes, Trustee submits it is in the best

interest of the estate and creditors that such offers meet certain minimum bidding procedures (the "Bidding Procedures").

40.     The proposed Bidding Procedures, which are included in the proposed Order and Notice will be served on all Prospects, creditors and interested parties, and provide:

a.     Each person (except the Initial Bidder, as such term is defined below) who seeks to bid on the Property (a "**Potential Bidder**," which term shall not include the Initial Bidder) should obtain a copy of the Agreement, if not previously obtained.  A copy of the Agreement may be obtained from Trustee (in his Office and Capacity as Trustee and not individually), at:

> Cathy L. Scarver
> P. O. Box 672587
> Marietta, Georgia 30006
> Phone:  404-551-5142
> Fax:  404-806-9652

(the "Trustee's Address"), or by requesting same from Trustee by email to *trusteescarver@bellsouth.net*.

b.     To participate in the bidding process, each Potential Bidder must deliver to Trustee at Trustee's Address, the following (in writing, unless designated otherwise), which shall constitute a Bid:

(1)   The full name, identity (e.g. limited liability company, if not an individual), address, and phone number of the proposed purchaser of the Property;

(2)   Written evidence, including financial means, of ability to consummate the transaction, with names, identities (e.g. limited liability company, if not an individual), addresses, phone numbers, whereby Trustee may verify same;

(3)   The name, identity (e.g. limited liability company, if not an individual), capacity, address, and phone number of a designated representative of the proposed purchaser, if any, who is authorized to act on behalf of the proposed purchaser at the Auction (as defined below) at the Final Sale Hearing;

(4)   A bid for the Property (the "**Bid**"), which is a signed letter from the Potential Bidder stating that (i) such bidder offers to purchase the Property upon the

10

terms and conditions set forth in a copy of the Agreement, clearly marked to show the amendments and modifications to the Agreement, including price and terms that the Potential Bidder proposes (the "**Marked Agreement**"), and (ii) the Potential Bidder's offer is open and irrevocable until Closing (as such term is defined below);

      (5)    The Bid must (i) guarantee to Trustee at least a $10,000.00 increase over the price offered in the Agreement, which equals $110,000.00 as a Potential Bidder's minimum bid price, (ii) is on terms otherwise identical to, or more advantageous to Trustee than, the terms of the Agreement, (iii) has **no** contingencies (including but not limited to obtaining financing, or on the outcome of unperformed due diligence by the Potential Bidder) other than the approval of the Potential Bidder as the Successful Bidder (as defined below), (iv) does not request or entitle the Potential Bidder to any termination fee, expense reimbursement or similar type of payment, and (v) which provides that the Potential Bidder agrees that its Bid shall remain open and subject to acceptance by Trustee until a Closing takes place;

      (6)    Trustee  prefers all cash, non-contingent contracts, so to the extent any Bid involves any contingency, delayed payment, delayed closing or non-cash components, Trustee, in his sole discretion, may value such components at any amount, including zero, and the Potential Bidder shall have no right of appeal whatsoever from Trustee's valuation;

      (7)    A good faith deposit (the "**Bid Deposit**"), in immediately available United States funds, in an amount which is at least a $10,000.00 increase over the Earnest Money provided by the Purchaser/Initial Bidder under the Agreement (which equals $20,000.00 as a Potential Bidder's minimum Bid Deposit), is placed with Trustee as escrow agent, and will be left in place until Closing in order to keep such Bid in place as a backup; and

      (8)    A detailed statement of ***any*** connections the Potential Bidder has with Steven C. Smith, the Debtor in the Bankruptcy Case.

      c.      A Bid is firm and binding upon each Potential Bidder at the time that such Bid is submitted to Trustee.

      d.      The above must be submitted and deposited so that it is received by Trustee not later than five (5) business days prior to the scheduled Final Sale Hearing (the "**Bid**

**Deadline**").

      e.      A "**Qualified Bidder**" is a Potential Bidder that (i) timely delivers the above, and (ii) whose financial information demonstrates, to Trustee's reasonable satisfaction, the financial capability of the Potential Bidder to consummate the purchase of the Property. Any bid received from a Qualified Bidder that meets these requirements will be a "**Qualified Bid**."

      f.      **BKGD, LLC** is the Initial Bidder.  For the purposes of these bidding procedures, the Agreement is a Qualified Bid, and the Initial Bidder is a Qualified Bidder.

      g.      Trustee shall advise the Initial Bidder of any other Qualified Bid not later than three (3) business days prior to the scheduled Final Sale Hearing.

      h.      If Trustee does not receive any Qualified Bids other than the Agreement, Trustee will report this fact to the Bankruptcy Court at the Final Sale Hearing and proceed with the sale of the Property to the Initial Bidder.

      i.      If at least one additional Qualified Bid for the Property is submitted, the Bankruptcy Court will conduct an auction (the "**Auction**") of the Property at the Final Sale Hearing, at which only the Initial Bidder and each other Qualified Bidder will be entitled to participate as bidders.

      j.      At the Auction, bidding will begin with the highest Qualified Bid and continue in increments of not less than $5,000.00.  The required minimum amount of incremental bids may be adjusted by Trustee, subject only to a requirement of good faith.  The bidding will not conclude until each participating bidder has had the opportunity to submit any additional Qualified Bid(s) with full knowledge of the existing highest bid.

      k.      At the conclusion of the bidding, Trustee will announce his determination as to the person (the **"Successful Bidder"**) submitting the highest and best bid for the Property (the "**Successful Bid**"). The Successful Bid, as determined by Trustee, will be submitted to the Bankruptcy Court for its consideration for approval at the Final Sale Hearing.  Notwithstanding anything to the contrary in the Motion, the determination of the highest and best bid for the Property shall be that of the Bankruptcy Court.

      l.      By participating in the Auction, each Qualified Bidder shall be deemed to acknowledge that it has had an opportunity to inspect the Property and any pertinent documents prior to bidding and that such Qualified Bidder relied solely on that review and upon its own

investigation and inspection regarding the Property in making its offers.

      m.    The Bid Deposit(s) shall be distributed, as follows:

      (1)   Upon Closing of the transaction for which the Bid Deposit was made, to Trustee;

      (2)   Upon or within ten (10) days after entry of a final order by the Bankruptcy Court disapproving the transaction for which the Bid Deposit was made:   refunded to the Successful Bidder;

      (3)   Upon or within ten (10) days after written notification to the Successful Bidder by Trustee of Trustee's inability to close the transaction, then refunded to the Successful Bidder; or

      (4)   If, due to the Successful Bidder's failure to consummate the sale of the Property, Closing does not occur within (i) the time period set forth in the Marked Agreement with respect to the Successful Bid, (ii) an additional time period acceptable to Trustee in writing, or (iii) an additional time period authorized by the Bankruptcy Court:  to Trustee.

      n.    Trustee as escrow agent shall hold in an escrow account, any Bid Deposit received in accordance with these Bidding Procedures.  Each Qualified Bidder acknowledges that Trustee shall act in accordance with these Bidding Procedures without further instructions. Trustee, Trustee as escrow agent, and Trustee's counsel shall have no duties or obligations except those expressly set forth herein and in the applicable Marked Agreement. Trustee, Trustee as escrow agent, and Trustee's counsel shall not be required to invest the Bid Deposits in an interest earning account or to segregate each deposit, but may, in their sole discretion, do so.  In the event of a dispute between a Successful Bidder and Trustee or Trustee as escrow agent, Trustee or Trustee as escrow agent (as is applicable) shall have the right to retain the Bid Deposit in escrow, and Trustee, Trustee as escrow agent, or the party making the Bid Deposit may apply to the Bankruptcy Court for a determination of the rights and obligations of Trustee, Trustee as escrow agent, and the party making the Bid Deposit.

      o.    Trustee will not be deemed to have accepted any bid, including the Successful Bid, until the Bankruptcy Court has entered an Order approving the Successful Bid and Trustee's consummation of the sale.   In the event Closing does not take place as provided

below, Trustee reserves the right to accept the next highest and best Qualified Bid.

          p.      If the Successful Bidder fails to close in accordance with the terms of the Successful Bid and the Order approving the sale, the Bid Deposit of such Successful Bidder will be retained by Trustee as liquidated damages, and not a penalty, it being agreed by participation in the bid process that actual damages are impossible to determine.  In such event, the Property will be sold to the Qualified Bidder submitting the next highest bid which is able to close in accordance with the terms of the Agreement or applicable Marked Agreement, as the case may be.

          q.      If Trustee does not consummate a sale of the Property for any reason (other than the Successful Bidder's failure to consummate a sale in accordance with the Agreement or applicable Marked Agreement, as the case may be, and the Order approving the sale), Trustee's sole obligation shall be to refund the Bid Deposit (if one was made by the Successful Bidder) to the Successful Bidder.

          r.      If the Initial Bidder is the Successful Bidder, the disposition of the Earnest Money, and any interest thereon, shall be governed by the Agreement.

          s.      Closing of the sale of the Property (the "**Closing**") shall take place in accordance with the closing date set forth in the Successful Bid.  With respect to Closing, time is of the essence.

          t.      The balance of the purchase price shall be paid by the Successful Bidder to Trustee, by wire transferred, certified funds or other good funds at Closing in a form acceptable to Trustee.

          u.      All adjustments to be made in connection with Closing, if any, shall be made as provided in the Successful Bid.

          v.      Any sale, assignment or other disposition of the Property shall be without representations or warranties of any kind, nature, or description by Trustee, its agents or the Bankruptcy Estate. The transactional documents shall provide that **THE TRUSTEE HEREBY EXPRESSLY DISCLAIMS ANY AND ALL EXPRESS OR IMPLIED WARRANTIES WITH RESPECT TO THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.  THE PROPERTY SHALL BE TRANSFERRED "AS IS", "WHERE IS, " WITH "ALL FAULTS."**

w.      In the event of any conflict in the terms and conditions set forth herein and in any agreement for purchase of the Property approved by the Bankruptcy Court ("Approved Purchase Agreement"), the court's Order shall govern.

x.      The Final Sale Hearing is to confirm a sale free and clear by the entry of a "Final Sale Order," and authorize specific payments from the proceeds of the sale at Closing.

y.      The Final Sale Order shall provide that all liens, claims, encumbrances, and interests in, to, or under the Property are removed from the Property and transferred and attached to the proceeds of the sale of the Property in the same priority and to the same extent and validity as such liens, claims, encumbrances, and interests attached to the Property.

## VI.  RELIEF REQUESTED

41.      Trustee respectfully requests that the Bankruptcy Court enter certain Orders and hold certain hearings.

42.      Those requests are as follows:

a.      Promptly enter an Order and Notice (i) Directing Bidding Procedures Subject to Objection, (ii) Setting Preliminary Hearing in Event of Objection to Bidding Procedures, and (iii) Setting Final Sale Hearing;

b.      In the Order and Notice, approve and direct the Bidding Procedures subject to an objection made in a specified manner and by a time certain;

c.      In the Order and Notice, set a Preliminary Hearing date, time, and place for consideration of any objection to the Bidding Procedures, in the event that there is such an objection.  Trustee does not anticipate an objection to the Bidding Procedures, however, if there is an objection and a Preliminary Hearing has not been pre-set, it may lead to delay and confusion, and impair the sale.

d.      In the Order and Notice, set a Final Sale Hearing, at which any auction will be held and a sale free and clear approved.

15

e.      At the Final Sale Hearing, hold an auction if there is another Qualified Bidder in accordance with the approved Bidding Procedures.

f.      At the Final Sale Hearing, if there is not another Qualified Bidder, approve the terms and conditions of the Agreement and approve Trustee's entering into the Agreement.

g.      At the Final Sale Hearing:

(i) authorize Trustee, pursuant to 11 U.S.C. §§ 105, and 363 (b), (f), and (m) [and Bankruptcy Rule 6004], to sell the Property to the Initial Bidder under the Agreement or the Successful Bidder, as is applicable, in accordance with the terms of the Agreement or Marked Agreement, free and clear of all liens, claims, interests, and encumbrances, with all such valid liens, claims, interests, and encumbrances attaching to the proceeds of the sale in the same order of priority as they attached to the Property;

(ii) find that the Initial Bidder or Successful Bidder, as is applicable, is a good faith purchaser of the Property within the meaning of Section 363(m) of the Bankruptcy Code; and

(viii) grant such other and further relief as is just and proper.

h.      At the Final Sale Hearing enter an Order as provided above.

**WHEREFORE**, Trustee respectfully requests that the Bankruptcy Court:

A.      Promptly enter an Order and Notice (i) Directing Bidding Procedures Subject to Objection, (ii) Setting Preliminary Hearing in Event of Objection to Bidding Procedures, and (iii) Setting Final Sale Hearing.

B.      In the Order and Notice, approve and direct the Bidding Procedures subject to an objection made in a specified manner and by a time certain.

C.      In the Order and Notice, set a Preliminary Hearing date, time, and place for consideration of any objection to the Bidding Procedures, in the event that there is such an objection.

D.      In the Order and Notice, set a Final Sale Hearing, at which any auction will be held and a sale free and clear approved.

E.      At the Final Sale Hearing, hold an auction if there is another Qualified Bidder in accordance with the approved Bidding Procedures.

F.      At the Final Sale Hearing, if there is not another Qualified Bidder, approve the terms and conditions of the Agreement and approve Trustee's entering into the Agreement.

G.      At the Final Sale Hearing:

(i) authorize Trustee, pursuant to 11 U.S.C. §§ 105, and 363 (b), (f), and (m) [and Bankruptcy Rule 6004], to sell the Property to the Initial Bidder under the Agreement or the Successful Bidder, as is applicable, in accordance with the terms of the Agreement or Marked Agreement, free and clear of all liens, claims, interests, and encumbrances, with all such valid liens, claims, interests, and encumbrances attaching to the proceeds of the sale in the same order of priority as they attached to the Property;

(ii) find that the Initial Bidder or Successful Bidder, as is applicable, is a good faith purchaser of the Property within the meaning of Section 363(m) of the Bankruptcy Code; and

(iii) grant such other and further relief as is just and proper.

H.      At the Final Sale Hearing enter an Order as provided above.

I.      Grant such other related relief as is just and proper.

17

C.L. SCARVER & ASSOCIATES, LLC


By: */s/Cathy L. Scarver*
     Cathy L. Scarver
     Georgia Bar No. 628455
     Counsel for Trustee
P.O. Box 672587
Marietta, Georgia 30006
Phone: 404-551-5142
Fax: 404-806-9652
Email:  clsallc@bellsouth.net

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I am more than 18 years of age, and that on the date set forth below I served a copy of the **TRUSTEE'S MOTION TO SELL MEMBERSHIP INTEREST IN ORLANDO GATEWAY, LLC FREE AND CLEAR AND FOR (A) AN ORDER AND NOTICE (i) DIRECTING BIDDING PROCEDURES SUBJECT TO OBJECTION, (ii) SETTING PRELIMINARY HEARING IN EVENT OF OBJECTION TO BIDDING PROCEDURES, AND (iii) SETTING FINAL SALE HEARING, (B) AN ORDER AT FINAL SALE HEARING APPROVING SALE FREE AND CLEAR** on the parties listed below, by placing a copy of same in an envelope in the United States Mail, with First-Class postage thereon to insure delivery, and addressed as follows:

Office of United States Trustee
75 Ted Turner Drive SW, Ste 362
Atlanta, GA 30303

Steven C. Smith
c/o Gina Micalizio, Esq.
P. O. Box 88644
Atlanta, GA 30356

Steven C. Smith
380 Majestic Cove
Alpharetta, GA 30004

BKGD, LLC
c/o John A. Christy, Esq.
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street, Suite 800
Atlanta, Georgia 30309

BKGD, LLC
5100 Peachtree Industrial Blvd.
Peachtree Corners, Georgia
30071

Bay Circle Properties, LLC
c/o John A. Christy, Esq.
Schreeder, Wheeler & Flint, LLP
1100 Peachtree Street NE,Ste 800
Atlanta, Georgia 30309-4516

Chittranjan (Chuck) Thakkar
c/o Moffa, Bonacquisti
& Brewer PLLC
Attn:  John Alan Moffa, Esq.
1776 N Pine Island Rd #102
Plantation, FL 33322

Georgia Department of Revenue
Attn:  Bankruptcy Section
P. O. Box 161108
Atlanta, GA  30321

Georgia Department of Revenue
Compliance Division
ARCS Bankruptcy
1800 Century Blvd, Suite 9100
Atlanta GA 30345-3202

SEG Gateway LLC
c/o Clay M. Townsend, Esq.
Morgan & Morgan PA
20 N. Orange Ave, Suite 1500
Orlando, FL 32801

SEG Gateway LLC
c/o Steinfeld & Steinfeld
Attn: Shayna M. Steinfeld, Esq.
P.O. Box 49446
Atlanta, GA 30359

Good Gateway, LLC
c/o James Balletta,
Registered Agent
301 E. Pine Street, Suite 1400
Orlando, FL 32801

Good Gateway, LLC
Attn: M. Carson Good
Managing Member
147 W. Comstock Ave. #100
Winter Park, FL 32789

This 11th day of March, 2016.

/s/  Cathy L. Scarver
Cathy L. Scarver
Georgia Bar No. 628455

C. L. Scarver & Associates, LLC
P. O. Box 672587
Marietta, Georgia 30006
Phone: 404-551-5142
Fax: 404-806-9652
Email:  clsallc@bellsouth.net

# ATTACHMENT I

TO TRUSTEE'S MOTION TO SELL

**(The "Agreement")**

# ATTACHMENT "I"

**ASSET PURCHASE AGREEMENT**

**BY AND BETWEEN**

**BKGD, LLC**

**AND**

**CATHY SCARVER, CHAPTER 7 TRUSTEE OF THE ESTATE OF STEVEN C. SMITH.**

February 8, 2016

## ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "Agreement"), is dated this 27th day of February, 2016, by, between and among Cathy L. Scarver, Chapter 7 Trustee of the Bankruptcy Estate of Steven C. Smith, Case No. 10-89420-PWB, in the United States Bankruptcy Court for the Northern District of Georgia ("Seller") and BKGD, LLC, a Florida limited liability company ("Buyer").

### RECITAL

A.     On October 2, 2010 (the "Petition Date"), Steven Smith filed a voluntary petition for relief under Chapter 7 of Title 11, in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division   (the "Bankruptcy Court"),   being Case No. 10-89420-PWB, (the "Bankruptcy Case").   On the Petition Date, the Debtor also filed his schedules (the "Schedules") and statement of financial affairs (the "SOFA") under penalty of perjury.

B.     Cathy L. Scarver was appointed Chapter 7 trustee in the Bankruptcy Case.   On March 8, 2013, an order was entered Approving Account, Discharging Trustee and Closing Estate, and thereafter the Bankruptcy Case was closed.

C.     On November 10, 2015, and order was entered reopening the Bankruptcy Case, and on November 13, 2015, Cathy L. Scarver was reappointed Chapter 7 Trustee (the "Trustee") in the Bankruptcy Case and continues as such.

D.     Upon the commencement of the Bankruptcy Case, a bankruptcy estate is created and all legal and equitable interests of the Debtor become property of the bankruptcy estate (the "Bankruptcy Estate").

E.     At the time the Bankruptcy Case was commenced, Steven C. Smith owned 100% of the membership interests in Orlando Gateway, LLC (the "Membership Interest"), which became property of the Bankruptcy Estate upon filing of the Bankruptcy Case.

F.     Seller is the Chapter 7 Trustee, and sole representative of the Bankruptcy Estate of Steven C. Smith, pursuant to 11 U.S.C. § 323(a). .

G.     Seller desires to sell any and all interest that the Bankruptcy Estate has in the Membership Interest, and Buyer desires to purchase the Membership Interest, pursuant to the terms and conditions set forth herein.

NOW WHEREFORE, for and in consideration of the recitals, the mutual covenants and agreements set forth below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

# ARTICLE 1
## TRANSFER OF ASSETS AND PURCHASE PRICE

**1.1**    <u>Assets</u>.  Subject to the terms and conditions of this Agreement and in consideration of the obligations of Buyer herein, Seller agrees to sell, convey, transfer and assign to Buyer at the Closing (as defined in Article 2) any and all interest that the Bankruptcy Estate has in the Membership Interest, including all managerial and ownership rights of Seller in Orlando Gateway, LLC pursuant to the Sale Order, as hereinafter defined, free and clear of all liens, claims and encumbrances.  The sale of the Membership Interest by Seller will be "AS IS" "WHERE IS" "WITH NO REPRESENTATIONS OR WARRANTIES WHATSOEVER, EXPRESS OR IMPLIED" and "WITH ALL FAULTS." Buyer does not assume or in any way undertake to pay, perform, satisfy or discharge any obligation or liability whatsoever of Seller which arise from acts or events prior to the date of Closing.

**1.2**    <u>Consideration</u>.  In consideration of the sale and transfer of the Membership Interest, Buyer will pay Seller One Hundred Thousand Dollars ($100,000) (the "<u>Purchase Price</u>"), of which Ten Thousand Dollars ($10,000) will be paid by Buyer at the time of execution of this Agreement (the "<u>Earnest Money Deposit</u>"), and the remaining Ninety Thousand Dollars ($90,000) will be paid at Closing, as defined below, by wire transfer to Seller's trustee bank account.

**1.3**    <u>Conveyance Documents</u>.  At the Closing, Seller will deliver to Buyer a Trustee's Quit Claim Bill of Sale, which shall be sufficient to convey and transfer to Buyer all rights, title and interest of Seller in the Membership Interest.

# ARTICLE 2.
## CLOSING

The transfer of the Membership Interest and payment of the Purchase Price referred to in Article 1 hereof (the "<u>Closing</u>") will take place via facsimile, email and or overnight express courier no later than five business days from the date an order of the Bankruptcy Court approving such sale becomes final, or at such other time and date as Seller and Buyer may in writing designate or such exchange actually occurs (the "<u>Closing Date</u>").

# ARTICLE 3.
## CONDITIONS TO CLOSING

The obligations of each party to this Agreement is conditioned upon entry of a final non appealable, with all appeal periods having expired with no appeal pending, order of the Bankruptcy Court pursuant to 11 U.S.C. § 363, authorizing the sale contemplated herein free and clear of all liens, claims, and encumbrances, or any other interest or claim against the Membership Interest, in substantially the form attached as <u>Exhibit "A"</u> hereto (the "Sale Order")  The Membership Interest is otherwise sold "AS IS" "WHERE IS" without representations or warranties from Seller.  Within five (5) business days after the execution of this Agreement, the Seller shall file a motion with the Bankruptcy Court seeking approval of this Agreement and entry of the Sale Order.

## ARTICLE 4.
## BUYER'S REPRESENTATIONS AND WARRANTIES

Buyer represents and warrants to Seller as follows:

**4.1**    **Existence and Qualification**.  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Florida with all requisite power and authority to carry on its business as presently conducted.

**4.2**    **Authority**.  Buyer has all requisite limited liability company power and authority to enter into this Agreement and to perform its obligations hereunder.  The execution, delivery and performance of this Agreement have been duly and validly authorized by all necessary action on the part of Buyer.  This Agreement constitutes a valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms except as the enforcement thereof may be affected by bankruptcy or other laws affecting the rights of creditors generally.

**4.3**    **No Conflicts**.  Neither the execution, delivery and performance of this Agreement, nor the consummation of the transactions provided for herein, will conflict with or result in a breach of the articles of organization or operating agreement of Buyer or any of the terms, conditions or provisions of any agreement or instrument to which Buyer is a party or by which it is bound.

## ARTICLE 5.
## GENERAL

**5.1**    **Fees and Expenses**.    Whether or not the transactions herein contemplated are consummated, (i) Seller will pay the fees, expenses and disbursements of Seller and its agents, representatives, accountants and counsel incurred in connection with the subject matter of this Agreement and any amendments hereto, and (ii) Buyer will pay the fees, expenses and disbursements of Buyer and its agents, representatives, accountants and counsel incurred in connection with the subject matter of this Agreement and any amendments hereto.

**5.2**    **Notices**.  Any notices or other communications required or permitted hereunder will be in writing and will be sufficiently given if delivered personally, sent by registered mail or certified mail (return receipt requested), reputable express courier or facsimile.  Such notice will be given by personal delivery, reputable express courier, or facsimile, and will be deemed received upon the earlier of receipt or three (3) business days after mailing by United States certified mail return receipt requested with adequate prepaid postage, addressed to the parties at the following addresses:

(a)    If to Buyer:

BKGD, LLC
5100 Peachtree Industrial Blvd.
Peachtree Corners, Georgia 30071

(b)     If to Seller, addressed to:

Cathy Scarver, Chapter 7 Trustee
P.O. Box 672587
Marietta, Georgia 30006

**5.3     Termination and Default**.

(a)     This Agreement may be terminated at any time prior to the Closing so long as neither party is in default:

(i)     by mutual agreement of Buyer and Seller in which case this Agreement shall terminate and the Earnest Money shall be refunded to the Buyer whereupon this Agreement shall terminate and neither party shall have any further rights or obligations hereunder; or

(ii)     by Buyer or Seller if the Sale Order is not entered within one hundred (120) days of the date of this Agreement in which case this Agreement shall terminate and the Earnest Money shall be refunded to the Buyer whereupon this Agreement shall terminate and neither party shall have any further rights or obligations hereunder.

In the case of a breach of this Agreement by the Buyer, the Seller's sole remedy shall be to retain the Earnest Money whereupon this Agreement shall terminate and neither party shall have any further rights or obligations hereunder.   If the Buyer is the defaulting party then Seller's exclusive remedy shall be an action for specific performance of Buyer's obligations.

**5.4     Applicable Law**.  This Agreement will be construed in accordance with the laws of the State of Georgia without regard to its conflict of law rules.

**5.5     Headings**.  The section and article headings in this Agreement are for convenience only and will not be considered a part hereof or affect the construction or interpretation of any provisions of this Agreement.

**5.6     Entire Agreement**.  This Agreement (including the exhibits and schedules hereto) and the documents delivered pursuant hereto constitute the entire agreement and understanding among Seller and Buyer and supersede any prior agreement and understanding relating to the subject matter of this Agreement.  This Agreement may be modified or amended only by a written instrument executed by Seller and Buyer acting through their duly elected officers.

**5.7     Counterparts**.  This Agreement may be executed simultaneously in two (2) or more counterparts, each of which will be deemed an original and all of which together will constitute but one and the same instrument.  Electronic signatures shall be deemed an original signature for the purposes of this Agreement.

**[THE NEXT PAGE IS THE SIGNATURE PAGE.]**

IN WITNESS WHEREOF, the parties have executed this Asset Purchase Agreement as of the day and year first above written.

BUYER:

BKGD, LLC

By: _____
    [Name]

Its'  _____
     [Title]

SELLER:

_____

Cathy Scarver in her Capacity as Chapter 7 Trustee for the Bankruptcy Estate of Steven C. Smith, Bankruptcy Case No. 10-89420-PWB, United States Bankruptcy Court, Northern District of Georgia

**EXHIBIT "A"**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 7 |
| | § | |
| STEVEN C. SMITH, | § | CASE NO.  10-89420-PWB |
| | § | |
| Debtor. | § | |

**ORDER GRANTING TRUSTEE'S MOTION TO SELL MEMBERSHIP
INTERESTS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES**

On February __, 2016, Cathy L. Scarver, the Chapter 7 Trustee (the "Trustee") in

the above-captioned case in which Steven C. Smith is the debtor (the "Debtor"), filed her

Motion to Sell Membership Interests   Free and Clear of Liens, Claims, and

Encumbrances (the "Motion") [**Doc. No**. _____]. .  In the Motion, the Trustee seeks to

sell the Debtor's membership interest in Orlando Gateway, LLC ("Membership

Interest"), an unscheduled asset which is property of the Bankruptcy Estate to BKGD,

LLC, a Florida limited liability company for a price of $100,000. The sale is proposed to

be free and clear of all liens, claims, and encumbrances with all valid liens, claims an

encumbrances to attach to the proceeds of sale.

A Notice of Requirement of Response (the "Notice") was also filed and served

February ___, 2016 and served on all creditors, the Debtor, and other parties in interest,

as provided in the certificate of service filed therefor.  The Notice required that any party

opposing the Motion, file its response or objection on or before March __, 2016, and set a hearing date of March __, 2016 if there were any objections.  There were no objections filed and no one appeared at the hearing to object to the Motion.

Upon consideration of the Motion, the record in this case and the argument of counsel at the hearing, the Court finds that the Membership Interest is property of the Bankruptcy Estate which was not scheduled by the Debtor as an asset and has remained property of the estate since the date on which this bankruptcy case was filed. As such, the Trustee is the only party with the sole authority to exercise the managerial rights arising from the Membership Interest and, with the approval of this Court, to assign, sell, convey, and transfer the Membership Interest.

The Court further finds that proper notice of the hearing on the Motion was given to all creditors and parties in interest as required by Fed. Bankr. R. 2002, 6004 and that the terms of the proposed sale and the consideration being paid for the Membership Interest are fair and adequate.

Based upon the foregoing findings of fact and conclusions of law, it is hereby:

**ORDERED, ADJUDGED, AND DECREED** that the Motion is granted and that pursuant to 11 U.S.C.§ 363, the Trustee is authorized to sell any and all interest that the Bankruptcy Estate has in the Membership Interest, including all managerial and

ownership rights arising therefrom, free and clear of all liens, claims and encumbrances

to BKGD, LLC, a Florida limited liability company for a price of $100,000 with all valid

liens, claims and encumbrances to attach to the proceeds of sale.

**IT IS FURTHER ORDERED** pursuant to Bankruptcy Rule 6004(h) this Order

shall not be stayed for fourteen (14) days and shall be final and effective upon entry.

**Prepared and presented by:**

C. L. SCARVER & ASSOCIATES, LLC

By: */s/ Cathy L. Scarver*
    Cathy L. Scarver
    Counsel for Trustee
    Georgia Bar No. 628455
P. O. Box 672587
Marietta, Georgia 30006
Phone: 404-551-5142
Fax: 404-806-9652
Email: clsallc@bellsouth.net

## DISTRIBUTION MAILING LIST

Office of United States Trustee
75 Spring Street, SW, Suite 362
Atlanta, GA  30303

Cathy L. Scarver
C. L. Scarver & Associates, LLC
P. O. Box 672587
Marietta, Georgia 30006

Steven C. Smith
380 Majestic Cove
Alpharetta, GA 30004-4566

Gina Micalizio, Esq.
P. O. Box 88644
Atlanta, GA 30356

Schreeder, Wheeler & Flint, LLP
Attn: John A. Christy
1100 Peachtree Street, Suite 800
Atlanta, Georgia 30309

BKGD, LLC
5100 Peachtree Industrial Blvd.
Peachtree Corners, Georgia 30071