# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

In re:  
STEVEN C. SMITH,

Case No.: 10-89420-pwb  
Chapter 7

        Debtor.

_____/

## SUPPLEMENTAL RESPONSE TO OMNIBUS OBJECTION TO NOTICE ON TRUSTEE'S MOTION TO SELL MEMBERSHIP INTEREST IN ORLANDO GATEWAY, LLC FREE AND CLEAR INCLUDING OBJECTION TO BIDDING PROCEDURES

Interested party, Chittranjan ("Chuck") Thakkar, and the proposed buyer of the Trustee's interest in Orlando Gateway, LLC ("OG"), BKGD, LLC, ("BKGD") a Florida LLC, by and through their undersigned attorneys, file this Supplemental Response to Respondents'[1] Omnibus Objection to Notice on Trustee's Motion to Sell Membership Interest in Orlando Gateway, LLC Free and Clear Including Objection to Bidding Procedures (the "Objection").

---

[1] Respondents are Good Gateway, LLC ("Good Gateway"), SEG Gateway, LLC ("SEG"), Carson Good, and James Balletta ("Balletta") (collectively, the "Respondents").

## INTRODUCTION

Respondents' objections should be denied as they are irrelevant to whether the Trustee can sell Steven Smith's ("Smith") interest in OG to BKGD on a "quitclaim basis" and because they are predicated on assertions that are directly contrary to previous sworn testimony, documents signed, and positions asserted in other courts by Respondents and/or Smith. Respondents' and Smith's perjurious positions should be rejected by this Court.

It is undisputed that, when OG was formed, Smith owned 100% of OG. OG, in turn, owned approximately 87% of SEG and Good Gateway owned the remaining approximately 13%. In 2009, SEG, through OG (through Smith), transferred its 45% interest in Orlando Gateway Partners, LLC ("OGP") to Niloy & Rohan, LLC, which is managed by Thakkar. In July 2010, Good Gateway filed a lawsuit in Florida against Thakkar and certain entities with which he is affiliated and Smith, OG, and SEG (the "Good Gateway Action"). Shortly after, on October 2, 2010, Smith filed for Chapter 7 relief in this Court. Smith, however, failed to disclose his 100% interest in OG in his schedules.

After Smith declared bankruptcy in 2010, Good Gateway purported to serve OG, through Smith, with the Good Gateway Action. It then purportedly obtained a

default judgment against OG. In 2012, OG, through Smith, transferred its interest in SEG to Good Gateway through a written document allegedly in partial satisfaction of this judgment. This transfer was documented in SEG's corporate records by Balletta. After this transfer, SEG, through Carson Good and Balletta, asserted claims against Thakkar and his affiliated entities in the Good Gateway Action, which led to a judgment against Thakkar and certain entities.

Thakkar and these entities, however, correctly pointed out that Smith failed to disclose his interest in OG in this bankruptcy, that his interest in OG belonged to the bankruptcy estate, and that he did not have the authority to transfer OG's interest in SEG to Good Gateway. This issue was briefed before the Florida trial court, and SEG argued that Smith had the authority to transfer OG's interest in SEG because, even if he was no longer the member of OG, he was still its manager. <u>Notably, during this briefing, Good Gateway and SEG never asserted that Smith transferred his interest in OG to Good Gateway in 2010 or that OG transferred its interest in SEG to Good Gateway in 2010</u>.

The trial court adopted SEG's argument and ruled in its favor. This ruling is directly contrary to on point bankruptcy precedent, which states that when the sole

member of a LLC files for bankruptcy, the Trustee obtains both the membership interest and the authority to manage the LLC.

The trial court's ruling regarding Smith's authority to transfer OG's interest in SEG in January 2012 is on appeal. While this appeal has been pending, the Trustee reopened the Bankruptcy due to Smith's failure to disclose his interest in OG. BKGD thereafter sought to purchase Smith's interest in OG. Likely in recognition of the fact that the trial court's ruling was incorrect and in a desperate attempt to maintain control of SEG, Respondents filed the Objection and other pleadings in this Court alleging that Smith transferred his interest in OG to Good Gateway in 2010, and that OG transferred its interest in SEG to Good Gateway in 2010. Respondents' assertions, however, are directly contrary to the positions that they asserted for years during the Good Gateway Action. Their attempts to abuse the judicial process should be rejected and are sanctionable.

## FACTS AND BACKGROUND

### I. The Timeline Of The Good Gateway Action Shows That Smith Did Not Transfer His Interest In OG To Good Gateway In 2010 And That OG Did Not Transfer Its Interest In SEG To Good Gateway In 2010.

The timeline of Good Gateway's and other Respondents' actions in the Good Gateway Action and this action show that Smith did not transfer his interest

in OG to Good Gateway in 2010, and that OG did not transfer its interest in SEG to Good Gateway in 2010.

- February 5, 2010: Smith signs an affidavit which states that "[a]t all material times, I have been the President and Sole Member of [OG]." (Ex. A ¶ 3.)[2]

- July 6, 2010: Good Gateway files a lawsuit against a number of defendants, including Smith, OG, and SEG. (Ex. B ¶ 1.)[3] If Smith had transferred his 100% interest in OG to Good Gateway in March or April 2010, then Good Gateway would have no reason to sue an entity that it wholly owns.

- October 2, 2010: Smith files for bankruptcy. (Doc. 1.) He fails to disclose his interest in OG. (*Id.*)

---

[2] Exhibit A is a true and accurate copy of the Affidavit of Steven C. Smith in *Good Capital Group, Inc., et al. v. Orlando Gateway, Partners, et al.*, Case No. 2009-CA-039746 (the "Good Capital Action"). The Good Capital Action was a related case that also was litigated in Florida.

[3] Exhibit B is a true and accurate copy of Good Gateway's Motion for Default against Defendant OG, which was filed in the Good Gateway Action.

- <u>November 8, 2010</u>: Smith testifies at the Meeting of the Creditors that he has not sold or given away anything that he owns in the last year. (Doc. 119-1 at 9:13-15[4].)

- <u>February 17, 2011</u>: Good Gateway purports to serve OG, through Smith, with the Good Gateway action. (Ex. B ¶ 2.)

- <u>March 18, 2011</u>: Good Gateway moves for a default judgment against OG. (Ex. B.)

- <u>June 9, 2011</u>: The Florida Court enters a default judgment in favor of Good Gateway and against OG for the amount of approximately $7.7 million. (Ex. C.)[5]

- <u>January 7, 2012</u>: OG and Good Gateway enter into a purported Agreement to Transfer and Assign Membership Rights. (Doc. 122-1 at 14-15 (Ex. C of Doc. 122-1).) Pursuant to this agreement, OG purported to transfer its title to its membership interest in SEG to Good Gateway. (*Id.*) The document is signed by Smith as OG's

---

[4] This citation is to the Transcript of the Meeting of Creditors.

[5] A true and accurate copy of this judgment is attached hereto as Exhibit C.

-6-

"Managing Member" and by Carson Good as Good Gateway's Managing Member. (*Id.*)

- January 8, 2012: The Amendment No. 1 to Operating Agreement of SEG is signed by Good Gateway, through Balletta as president of Good Gateway. (Doc. 122-1 at 17-19 (Ex. D. of Doc. 122-1).) This Amendment includes a recital that OG "transferred and assigned all of its Membership Interest in the Company to [Good Gateway] pursuant to that certain Agreement to Transfer and Assign Membership Rights dated January 7, 2012, the result of which is that [Good Gateway] is the sole member of the Company." (*Id.*)

- January 8, 2012: The Written Consent of Sole Member of SEG is signed by Good Gateway, through Balletta as president of Good Gateway. (Doc. 122-1 at 21-22 (Ex. E of Doc. 122-1).) This document includes a recital that OG "transferred and assigned all of its Membership Interest in the Company to [Good Gateway] pursuant to that certain Agreement to Transfer and Assign Membership Rights dated January 7, 2012," and another recital which stated that "as a

-7-

- result of the Assignment, [Good Gateway] is the sole Member of the Company." (*Id.*)

- June 5, 2012: Carson Good testifies in a deposition that the purpose of the January 7, 2012 assignment was "[t]o transmit Orlando Gateway, LLC's, membership interest in SEG to Good Gateway, LLC. Transfer." (Ex. D at 27:2-15.)[6] He also testified that until the January 2012 documents were created, OG was the managing member of SEG, and that Steve Smith was the sole member of OG. (Ex. E 105:12-106:1.)[7]

- August 1, 2012: Balletta testifies in a deposition that Good Gateway obtained a judgment against OG, which was "Steve Smith's entity," and that the January 7, 2012 assignment was "when Steve conveyed [OG's] interest in SEG to Good Gateway." (Ex. F at 36:22-37:19.)[8]

---

[6] A true and accurate copy of Volume I of the June 5, 2012 transcript of the deposition of Carson Good is attached hereto as Exhibit D.

[7] A true and accurate copy of Volume II of the June 5, 2012 transcript of the deposition of Carson Good is attached hereto as Exhibit E.

[8] A true and accurate copy of the August 1, 2012 transcript of the deposition of Balletta is attached hereto as Exhibit F.

- August 5, 2014: SEG submits a brief in opposition to certain defendants' motion for directed verdict. (Doc. 116-1.) In this brief, SEG stated that in his October 2, 2010 filings with this Court, Smith disclosed his interest in OG. (*Id.* ¶15.) This brief further stated that Good Gateway's bankruptcy attorney prepared the transfer documents "whereby OG (by Smith's signature) transferred OG's membership interest in SEG to Good Gateway. On or about January 7, 2012, OG transferred its membership interest in SEG to Good Gateway." (*Id.* ¶ 25(b).) SEG goes on to claim that even though Smith was in bankruptcy, he had authority to sign over OG's interest. (*Id.* ¶ 25(c).) Moreover, SEG confirmed that the January 2012 assignment was the document by which OG's interest was assigned to Good Gateway. (*Id.* ¶ 26.)

- March 11, 2016: The Trustee moves this Court to sell the membership interest in OG. (Doc. 93.)

- April 7, 2016: Respondents submit their objections to this sale of the Trustee's membership interest in OG. (Doc. 102.) Respondents argue

that the membership interest in OG that the Trustee seeks to sell is actually owned by Good Gateway. (*Id.* at 1.)

- <u>April 19, 2016</u>: Respondents file an adversary proceeding in which they argue <u>for the first time</u> that Smith surrendered his membership interest in OG to Good Gateway and that OG surrendered its membership interest in SEG to Good Gateway in March 2010 pursuant to an oral "agreement." (Doc. 111 ¶ 13; Doc. 111-2 ¶ 11.) In support of this position, Respondents submitted affidavits, including affidavits from Steve Smith and Carson Good, which claimed the same. (Doc. 111-1; Doc. 111-2.)

## II. **Respondents' New, False Position Regarding The Ownership Of OG.**

The above timeline shows that after the Trustee moved to sell the membership interest in OG to BKGD, and shortly before the hearing to approve the sale, Respondents filed numerous documents with this Court in an effort to disrupt this sale. Respondents now allege, including in sworn testimony, that Smith transferred his interest in OG to Good Gateway and that OG transferred its interest in SEG to Good Gateway in March of 2010 pursuant to an alleged oral agreement. (*See* Doc. 111; 111-1; 111-2.) Prior to the Trustee's effort to sell the

membership interest in BKGD, none of the Respondents had previously disclosed either the alleged oral transfer of Smith's interest in OG to Good Gateway or the alleged oral transfer of OG's interest in SEG to Good Gateway. These pleadings are merely a transparent attempt to interfere with BKGD's purchase of this interest.

Respondents' pleadings speak for themselves and they are directly contrary to the positions that they asserted in the Good Gateway Action. If the March 2010 transactions did previously take place, then Good Gateway and its principals engaged in an extended campaign of fraud on the Florida trial court. Respondents should not be allowed to abuse the judicial system through material misrepresentations and omissions, either to this Court or to the Florida trial court.

## ARGUMENT AND CITATION TO AUTHORITY

It is well settled law that Smith's membership and managerial interest in OG transferred to his bankruptcy estate, and that he did not have authority to transfer OG's interest in SEG to Good Gateway after he filed his bankruptcy petition. Section 541 of the Bankruptcy Code provides that all legal and equitable interests of the debtor in property become property of the bankruptcy estate. 11 U.S.C. § 541(a)(1). Courts have held that when a debtor is the sole member of a LLC, the right to manage the LLC also transfers to the estate. *See In re Albright*, 291 B.R.

538 (Bankr. D. Colo. 2003), (holding that when debtor is the sole member of a LLC, "the Debtor's bankruptcy filing effectively assigned her entire membership interest in the LLC to the bankruptcy estate, and the Trustee obtained all her rights, including the right to control the management of the LLC.")  For instance, in *In re Modanlo*, 412 B.R. 715 (Bankr. D. Md. 2006), the court held that under Delaware's LLC laws, when a debtor is the sole member of a LLC, the trustee obtains the authority to manage the LLC.  Debtor was the sole member of a LLC, which owned about 65% of the equity interests in a corporation, which had obtained a judgment for approximately $12 million.  After the debtor filed for bankruptcy, the trustee resuscitated the LLC, which had been dissolved, and filed a voluntary Chapter 11 petition for the LLC.  The debtor argued that the trustee, at best, is an assignee of debtor's interest in the LLC and has economic interests, but lacks any governance or management authority.  The court rejected this argument and held that the trustee "possesses both the economic and governance rights to participate in the management of [the sole member LLC] that the Debtor himself enjoyed prior to his bankruptcy filing."  The court reasoned that this result is appropriate because there are no remaining members to protect in single member LLCs.

Likewise, in *In re A-Z Electronics, LLC*, 350 B.R. 886 (D. Idaho 2006), the court held that an individual who was in bankruptcy, who was the sole member of a LLC prior to filing for bankruptcy, did not have the authority to direct the LLC to file for bankruptcy because his interest in the LLC belonged to the trustee. The individual filed a petition for chapter 7 relief and claimed to own 100% of the LLC. Subsequently, the LLC, at the individual's direction, filed a voluntary chapter 11 petition. The court held that the LLC's petition was improperly filed. It reasoned that the trustee was the only person entitled to manage the LLC and to determine whether the LLC would file for bankruptcy.

Notably, in *In re Penn*, No. 09-14624, 2010 WL 9445533 (Bankr. N.D. Ga. Apr. 2, 2010), this Court recognized with approval the holdings in *Modanlo* and *Albright*. Debtor owned 100% of a LLC which owned real property. A secured lender foreclosed on the real property. Debtor argued that the property was protected by the automatic stay. The court held that the automatic stay did not apply to actions taken against the LLC. The court recognized the holdings in *Albright* and *Modanlo* that the trustee succeeded the debtor's authority as sole member and manager of a single member LLC and had whatever authority the debtor had to manage and control the LLC. The court, however, held that the

trustee's authority to manage the assets of the LLC does not make the assets of the LLC property of the estate.

Additionally, Article VII.1. of OG's operating agreement states that "[t]he business and affairs of the Company shall be managed by the Member. The Member shall have full and complete authority, power and discretion (a) to manage, control and make all decisions regarding the business, affairs (including the formulation of policies and management of financial affairs) and Property of the Company, and (b) to perform any and all other acts or activities customary or incident to the management of the Company's business." (Ex. G.)[9] Thus, when Smith filed his petition for bankruptcy, the bankruptcy estate obtained his membership interest and, thus, all of his managerial authority pursuant to the terms of OG's Operating Agreement.

## CONCLUSION

For the above reasons, Respondents' Objection should be denied.

---

[9] A copy of OG's Operating Agreement is attached hereto as Exhibit G.

Respectfully submitted, this 13th day of June 2016.

/s/ Richard L. Robbins
Richard L. Robbins
Georgia Bar No. 608030
rrobbins@robbinsfirm.com
ROBBINS ROSS ALLOY
BELINFANTE LITTLEFIELD LLC
999 Peachtree Street, N.E., Suite 1120
Atlanta, Georgia 30309
Telephone: 678-701-9381
Fax: 404-856-3250

*Attorney for BKGD, LLC and Chittranjan Thakkar*

## CERTIFICATE OF SERVICE

I certify that on this day, I served a copy of the foregoing **SUPPLEMENTAL RESPONSE TO OMNIBUS OBJECTION TO NOTICE ON TRUSTEE'S MOTION TO SELL MEMBERSHIP INTEREST IN ORLANDO GATEWAY, LLC FREE AND CLEAR INCLUDING OBJECTION TO BIDDING PROCEDURES** via the CM/ECF electronic filing system on all Electronic Filing Users who have consented to such service.

/s/ Richard L. Robbins
Richard L. Robbins